# National Mutual Aid Society *versus* Lupold.

1. A mutual aid society, the purpose of which was by its charter stated to be the mutual protection and relief of its members, issued a certificate of membership to a certain party whereby it undertook to assure her life in a certain sum, and to pay said sum to her or any person designated by her will or her heirs if no other person was designated by the will or on proof of her death. The certificate contained the following clause: "This certificate may be assigned and transferred only by and with the consent of the association endorsed thereon." A few days after the issue of the certificate, A. endorsed and assigned the same to B., but without any approval by the company. A. having subsequently died, B. presented proofs of death, and claimed the amount of the certificate. This claim being resisted by the Mutual Aid Society; and suit being brought thereon against them by B.,—*Held*, that the clause prohibiting assignment without the written consent of the society was a valid one, and was an essential feature of the contract; that the association had the right to insist on the benefit of the protection it was intended to afford, and that therefore the plaintiff was not entitled to recover.

2. The receipt by the association from B., after the death of A., of assessments due on the certificate, was not such a waiver on their part, or such a recognition of his rights, as would entitle him to recover on the certificate.

3. The provisions of the Act of March 14th 1873, Pamph L. 46, authorizing assignees of life, fire and marine insurance policies to sue in their own name, have no application where it is an express provision of the policy of insurance that the same shall not be assigned or transferred without the consent of the insurance company, and such assent has not been given.

4. *Semble*, that a mutual aid association is an insurance company within the purview of the above Act.

5. Commonwealth *v.* National Mutual Aid Association, 13 Norris 481, explained.

May 30th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Dauphin county:* Of May Term 1882, No. 69.

Debt, by Isaac Lupold, against the National Mutual Aid

Society, upon two certificates of membership in the said society insuring the life of one Sarah M. Snyder, which certificates were claimed to have been duly assigned to plaintiff.

On the trial, before SIMONTON, P. J., the facts of the case appeared to be as follows:—On November 3d 1880, one Sarah M. Snyder made written application to the company defendant for two certificates of membership therein, one to insure her life in the sum of $3,000, and the other in the sum of $4,000. The company, defendant is incorporated under the laws of Ohio. Said laws provide, *inter alia*, as follows:

"SEC. 3630. A company or association may be organized for the purpose of mutual protection and relief for its members, and for the payment of stipulated sums of money to the families or heirs of the deceased members of such company or association, and may receive money, either by voluntary donation or contribution, or collect the same by assessments on its members, and may distribute, invest, and appropriate the same in such manner as it may deem proper."

The charter of said company provided, *inter alia*, as follows:

" The purpose of the association shall be for the mutual protection and relief of its members, and for the payment of stipulated sums of money to the families or heirs of the deceased members of the association ; but if a member dies within the period named in his certificate, the amount shall be then payable to his legal heirs or any person designated in the certificate or by his will."

In pursuance of the above applications and the provisions of its charter, the company defendant on November 20th 1880, issued two certificates of membership to Sarah M. Snyder, one for $3,000 and one for $4,000. The former certificate provided " that in consideration of the representations made to it in the application for this certificate, and of the sum of $10, duly paid, the receipt whereof is hereby acknowledged, and of the further payment of an assessment of $1, to be paid at the death of a member, in accordance with the rules and regulations of the association, does assure the life of Sarah M. Snyder, in the amount of such sum as will equal 75 per cent. of the amount collected of the assessment made for the payment thereof, but not to exceed $3,000. And the said association does hereby promise and agree to pay the amount of said claim, at its office in Columbus, Ohio, in conformity with the rules and regulations of the association, to herself or any person designated by his will, or his heirs, if no person is designated herein, or by will, within ninety days after due notice and proof of death of said party, whose life is hereby insured."

The certificate then set forth certain conditions, upon which the same was stipulated to be issued by the association and ac-

cepted by the insured. These were numbered in succession from one to seven, and were in small type. Following these, in large type, was the following clause:

"This certificate may be assigned and transferred only by and with the consent of the association endorsed thereon."

Then followed the ordinary attestation clause. The other certificate, for $4.000, contained similar provisions.

Upon the back of both certificates was endorsed the following:

"To D. E. Stevens, Secretary N. M. A. A.: It is my desire and I hereby request and authorize you to change the beneficiary in this my certificate No. 433, from Sarah M. Snyder, myself, unto Isaac Lupold, and all rights, titles, interest in this certificate No. 433, this 27th day of November, 1880.

her<br>"SARAH ⋈ M. SNYDER, [L. S.]<br>mark

Witness: OBADIAH LAWLEY."

No consent of the association was shown to the assignment.

On March 20th 1881, Sarah M. Snyder died, leaving a will, whereby she devised and bequeathed all her property to one Sarah Rassler. Plaintiff, claiming the amount of the certificates in suit by virtue of the assignments to him, forwarded proofs of death to the company, which were received by them March 31st 1881. He also put in evidence receipts given to him for four assessments paid on one certificate, and one assessment on the other, dated April 12th 1881. Subsequently, the company defendant refused to pay him the amount of the certificates, whereupon he brought the present suit.

Defendant requested the court to charge, inter alia, as follows:

2. The plaintiff has failed to legally connect himself with the alleged cause of action, and therefore cannot recover.

Answer: We understand this point to be intended to advance the proposition that by the terms of these certificates they could not be assigned without notice to the company, and ratification of the assignment by the company; in other words, that the clause which I shall now read forbids an assignment, and renders it of no effect, unless the company be notified of the fact and endorse their assent thereto upon the policy. The clause referred to is: "This certificate may be assigned and transferred only by and with the consent of the association endorsed thereon." And the defendant says it has not been assigned; that there is no endorsement on the certificates; that the assignment goes for nothing; and that therefore the plaintiff cannot recover. As to that assignment, in matter of fact, there

is some little evidence of ratification. There have been given in evidence two receipts, dated April 12th 1881, from the association to Isaac Lupold, for assessments on these policies, for other deaths. Those persons had died, and Isaac Lupold being the holder of these certificates, they assessed him just as they did the other members; which would seem to show that the association knew the fact, and recognized the fact, that Isaac Lupold was the holder and owner and the beneficiary in these certificates. The receipts are: "Columbus, O., 12th April, 1881. Received of Isaac Lupold assessments 48, 49, 50, and 51; credit 5,280." Which is one of these certificates. The other, of the same date, credits one dollar to certificate 433, which is the other certificate.

There is further, in the by-laws, a provision that may possibly have some bearing on this point. At the end of page 4, in the charter and by-laws, there is a provision that "if the member dies within the period named in the certificate, the amount shall then be payable to his legal heirs, or any person designated in the certificate, or by his will."

Now, that, and this provision itself, upon the certificate, show that the company did contemplate such a thing as assignment ; and we cannot say, as we are asked to do by the defendant, that these certificates are not assignable at all. The defendant argues that they are not assignable, because this is a mutual benefit association ; but we know of no law, or rule of law, which renders them unassignable for that reason. If this provision had been that unless notice were given to the company, and endorsed on the certificate, that the certificate should be void, then this objection would be fatal; but there is no penalty annexed to the failure to notify the company and have the endorsement upon it; and therefore it is, we think, analogous to the provision that is contained in almost all certificates on shares of stock in corporations: "This certificate assignable only upon the books of the company," or something of that kind. That is contained on almost all of them. Notwithstanding that clause, the courts always have held that the title to the stock passed by assignment, even if the company was not notified, or the transfer was not made upon the books of the company. There are certain legal consequences that may depend upon whether that has been done or not; but so far as the title to the shares go, represented by the certificate, the title passes without being transferred upon the books of the company. It is called by lawyers "an equitable interest," and the title passes, which in this state is just as good ownership or title, as between the parties, as the legal title. We therefore instruct you on this point that these certificates were transferable—assignable—and notwithstanding the fact that the association was not notified,

if they were not, and notwithstanding the fact that no endorse-ment of consent was entered upon the certificates, nevertheless the transfer was valid between the parties, and this failure to notify and endorse does not stand in the way of maintaining this action.

3. The plaintiff is no relative of the insured, or of her family, and therefore has no such insurable interest in law as will entitle him to recover.

Answer: It appears by the claim of loss, or the death proof, that Isaac Lupold, the plaintiff, is not a relative; he expressly so declares. We refused to allow this death proof to go in evidence generally to the jury, on the part of the plaintiff, their purpose being simply to show that he was in a position to sue, by having performed the preliminary duty of notifying of the death. It was open, however, for the defendant, if he chose, to give these death proofs in evidence; and he did offer them in evidence; and over the objection of the plaintiff, they were admitted in evidence; and therefore what they state must be taken as evidence of the declarations of the plaintiff—as evidence against him where it makes against him; and evi-dence for him, if it makes for him—being offered by the other side.

Now, the question intended to be raised by the defendant by this third point, we understand, is, that as the defendant has not shown that he had any interest in Sarah M. Snyder's life, as it is called in law, at the time that the assignment was made to him, that therefore he had no right to take the policy; that it is against the law, and against the policy of the law; and that therefore he could acquire no interest in the policy. No evidence was given on the part of the plaintiff that Lupold had any such interest; neither was any evidence given on the part of the defendant that he had not, unless such evidence be found in this claim of loss.

The defendant claims that if the plaintiff had no interest, it was what is called "speculative insurance," or a "wager policy."

Now, upon this death loss there is one question asked: "Have you, or any party in interest in this certificate, become so interested for purposes of speculation?" And to that the answer is: "No, not to our knowledge." That may be taken for whatever it is worth. It is a denial on the part of the plaint-iff, and is given in evidence by the defendant, that he took this assignment for speculative purposes; and even, apart from that, in the absence of any evidence on the other side—in the absence of any evidence on the part of the defendant that he had no interest, and that he did take this as a speculative or wager policy—we instruct you that the presumption must be that the transaction was legal. The law always presumes in

favor of legality rather than illegality, and therefore we cannot say, as asked in this third point, that the plaintiff is precluded from recovering because of any failure to show that he had any interest.

Verdict for the plaintiff and judgment thereon. Defendant thereupon took this writ of error, assigning for error, inter alia, the answers of the court to the second and third points as above.

*Hall & Jordan,* for the plaintiff in error.—The corporation had no legal power to insure for the benefit of one not a relative of the members, nor did it do so. Such a contract would have amounted to a wagering contract, and would have been invalid : Mutual Benefit Association *v.* Hoyt, 13 Cent. L. J. 112 ; Warnock *v.* Davis, 25 Alb. L. J. 292 ; Cammack *v.* Lewis, 15 Wall. 643 ; Insurance Co. *v.* Hogan, 80 Ill. 35 ; Insurance Co. *v.* Sturges, 18 Kans. 93 ; Pritchet *v.* Insurance Co., 3 Yeates 458 ; De Bolle *v.* Pennsylvania Insurance Co., 4 Whart. 68.

The facts show that the insurance was really intended, from the first, entirely for plaintiff's benefit, and that the act of Sarah M. Snyder in taking out the policy was merely colorable. The law cannot be in this manner evaded : Hine & Nichols on Assignments 75.

Plaintiff being not a party to the original contract of insurance, cannot sue thereon : Flynn *v.* N. A. Life Ins. Co., 115 Mass. 449 ; Saunders *v.* Filley, 12 Pick. 554 ; Johnson *v.* Foster, 12 Metc. 167 ; Millard *v.* Baldwin, 3 Gray 484 ; Northampton *v.* Elwell, 4 Gray 81 ; De Bolle *v.* Penn. Ins. Co., 4 Whart. 67 ; Frankem *v.* Trimble, 5 Barr 520 ; Waterhouse *v.* Insurance Co., 69 Me. 409.

Plaintiff is not entitled to sue in his own name, as assignee, by virtue of the provisions of the Act of March 14th 1873, because the company defendant is not an insurance company : Commonwealth *v.* National Mutual Aid Association, 13 Norris 481.

Then, again, the certificates sued on expressly prohibited any assignment or transfer thereof, except by the consent of the company endorsed thereon ; and it was not even alleged or pretended, much less proved, that any such assent or endorsement had ever been obtained, or even asked for. That an assignee can acquire no right of action in such case is established by the following authorities : Ferree *v.* Insurance Co., 17 P. F. S. 373 ; Insurance Co. *v.* Hebard, 10 Reporter 443 ; 37 Leg. Int. 348 ; Stevens *v.* Warren, 101 Mass. 564 ; Unity Mut. Life Assurance Association *v.* Dugan, 118 Mass. 219 ; Hine & Nichols on Ass. 84.

*J. C. McAlarney,* for the defendant in error.—Sarah M. Sny-

der made the applications for the insurance, the certificates were issued to her, and that she had an interest in her own life, which she could insure with the money of Isaac Lupold if she choose, and then assign the policies to him, will not now be questioned in the courts of Pennsylvania. In the language of C. J. SHARS-WOOD: "If he was willing to insure himself with their money, and then assign the policy to them, there is no principle of law which can prevent such a transaction :" Cunningham *v.* Smith's Adm's, 20 P. F. S. 458; Clark *v.* Allen, 11 R. I. 441; Hine & Nichols, Life Insurance Assignments 85.

She could insure her own life, and present the policy as a gift to Isaac Lupold : Am. L. & H. Ins. Co. *v.* Robertshaw, 2 Casey 189.

The defendant below was an insurance company : State *v.* Mutual Protection Society, 26 Ohio St. 19; Commonwealth *v.* Wetherbee, 105 Mass. 149. Plaintiff was therefore entitled to sue in his own name by virtue of the provisions of the act of April 4th 1873.

The direction of the company as to the manner in which the assignment of their certificates is to be made is not part of the conditions, and the violation of which does not affect the validity of the certificate or assignment, there being no penalty attached. For where an assignment is simply prohibited without consent, no penalty attached, a violation of the prohibition does not affect the validity of the policy or of the assignment : Hine & Nichol's Law of Assignments of Life Ins. 41; Marcus *v.* St. Louis M. L. Ins. Co., 6 Ins. Law Journal 186.

But the assignments in this case are relieved from any difficulty from want of consent, if necessary, as the company ratified and confirmed them by demanding and receiving assessments from Isaac Lupold, the plaintiff, after they had in their possession the evidence of their assignment to him and his claim upon the corporation.

By demanding and receiving assessments, they waived the right to avoid, and must stand upon it : Cumberland Val. In. P. Co. *v.* Mitchell, 12 Wright 374.

Mr. Justice STERRETT delivered the opinion of the court, October 4th 1882.

The charter of the plaintiff in error, adopting the statute of the state of Ohio under which it was organized, declares, "The purpose of the association shall be the mutual protection and relief of its members, and for the payment of stipulated sums of money to the families and heirs of deceased members," and provides that "if a member dies within the period named in his certificate the amount shall be payable to his legal heirs, or any person designated in the certificate or by his will." In these

particulars the certificates of membership or contracts of insurance on which the suit was brought conform to the charter; and, among other things, it is expressly declared therein that each certificate is issued by the association and accepted by the assured upon certain specified conditions, one of which is that it "may be assigned and transferred only by and with the consent of the association endorsed thereon." The right of the contracting parties to thus prohibit an assignment of the certificate without the written consent of the association cannot be seriously doubted; and in view of the fact that the sole purpose of the association is "the mutual protection and relief of its members," the propriety, if not the necessity, of such a condition is equally clear. The personal character of each holder of a certificate, and the interest he has in the life of the person thereby insured, are essential elements in the contract of mutual indemnity. The obvious tendency of an unrestricted right of transfer would be to create interests directly hostile to those of the regular membership. It is therefore clear that the condition is an essential feature of the contract, and the association has a right to insist on the benefit of the protection it was intended to afford.

The certificates in question, based on applications of Sarah M. Snyder, were issued to her in November 1880, and four months thereafter she died testate, devising and bequeathing all her property, real, personal, and mixed, to her friend Sarah Rassler. The undertaking of the association, as expressed in the certificates, was to assure the life of Miss Snyder in a specified sum, and to pay the same, in accordance with its rules and regulations, to "herself or any person designated by her will," coupled with the express condition that the certificates, and of course any rights accruing thereunder, should not be assigned or transferred without the written consent of the association. The plaintiff below, claiming the certificates by virtue of an assignment dated a few days after they were issued, furnished proofs of death, etc., and, upon the refusal of the association to recognize his claim, brought suit in his own name. The question raised by the second point of the defendant below was whether, in view of the condition above recited, the action could be maintained. It is not pretended that written consent to the assignment was ever given, but it was contended there was evidence tending to show that the association had waived literal compliance with the condition, and recognized the plaintiff below as the owner of the certificates by receiving from him assessments after the death of Miss Snyder. Receipts for payment of assessments were produced, and upon that testimony the learned judge submitted the question to the jury. In this we think there was error. The assessments due the association might be paid by any one, and the fact that they were received

[Pennsylvania Canal Co. v. Harris.]

from a volunteer or any one else did not affect the contract. In short, there was nothing before the jury to warrant them in finding that the condition in question had been waived or that the plaintiff below had been recognized as assignee of the certificates, and they should have been so instructed. It is claimed, however, that the suit was rightly brought under the Act of March 14th 1873, Purd. 1799, pl. 28, authorizing assignees of life, fire and marine insurance companies to sue in their own name. This would undoubtedly be so if the association had assented to the transfer ; but when it is made an express condition of the contract itself that the certificates shall not be otherwise assigned or transferred, the act referred to does not apply.

The contention that the association is not an insurance company within the meaning of the Act of 1873, cannot be maintained. All that was decided in Commonwealth v. The National Mutual Aid Association, 13 Norris 481, was that the corporation was excepted from the operation of the Act taxing foreign insurance companies.

Judgment reversed.