**CGU LIFE INSURANCE COMPANY OF AMERICA, and CGU Annuity Service Corporation,**

v.

**METROPOLITAN MORTGAGE & SECURITIES CO., INC., Woodbridge Sterling Capital LLC, and Lester E. Lytle, Jr.**

No. CIV.A.00–CV–0271.

United States District Court, E.D. Pennsylvania.

Feb. 2, 2001.

Stephen C. Baker, Stephen R. Harris, Stradley, Ronon, Stevens & Young, Melvern, PA, for plaintiffs.

Jeffrey S. Saltz, Law Office of Jeffrey S. Saltz, Philadelphia, PA, Lester E. Lytle, Jr., Bangor, PA, for defendants.

### *MEMORANDUM AND ORDER*

JOYNER, District Judge.

Now pending before this Court are the cross-motions for summary judgment of the Plaintiffs, CGU Life Insurance Company of America and CGU Annuity Service Corporation, and the Defendants, Metropolitan Mortgage & Securities, Co. and Woodbridge Sterling Capital. For the reasons outlined below, the plaintiffs' motion shall be granted and the defendants' motion denied.

#### *Background*

This declaratory judgment action arose on or about November 14, 1997, when defendant Lester E. Lytle, Jr. and his wife executed a Settlement Agreement and Release with the Home Insurance Company, which was then acting on behalf of David P. Eddy and Delaney Moving, Inc., its insureds. Under the terms of that Settlement Agreement, Mr. Lytle, his wife and their attorney, were to immediately receive a lump sum payment of $225,000 followed by periodic payments of $1,200.82 per month from November 15, 1997 until May 15, 2023, along with two other lump sum payments of $5,000 on October 23, 2001 and October 23, 2009. The Settlement Agreement and Release further contemplated that Home Insurance Co. would

make a qualified assignment of its liability to make the periodic payments to CGU Annuity Service Corporation and that CGU Annuity would further have the right to purchase an annuity policy to fund the obligations to make these payments from the CGU Life Insurance Company of America. The Settlement Agreement further provided, at paragraph 3.0:

Plaintiffs acknowledge that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiffs or any Payee; nor shall the Plaintiffs or any Payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

In accordance with the Settlement Agreement and Release, Home Insurance Company executed a "Uniform Qualified Assignment" of its liability to make the periodic payments to Mr. Lytle and his wife to CU Annuity Service Corporation, which then purchased an annuity from CU Life providing for the payments agreed upon. The annuity documents specified that the owner of the annuity was CU Annuity Service Corporation, the annuitant was Mr. Lytle, and the beneficiary was his Estate.

On August 3, 1998, Defendant Lytle, apparently finding himself in need of a large amount of cash sooner than expected, sold his right to receive some of the periodic payments in exchange for a lump sum payment of $20,000 from Woodbridge Sterling Capital LLC. As part of this transaction, Lytle entered into a Purchase and Sale Agreement with Woodbridge, which subsequently assigned its rights to Metropolitan Mortgage & Securities Company. For a time, however, Mr. Lytle evidently stopped forwarding to Metropolitan the periodic payments which he had sold and Metropolitan brought suit against him in the Superior Court of Washington, Spokane County. Mr. Lytle never ap-

peared in that action and, on November 17, 1999, judgment was entered against him and in favor of Metropolitan in the amount of $4,331.51. As part of its judgment in that case, the Washington Superior Court further ordered and decreed that the Purchase and Sale Agreement between Woodbridge and Lytle and the subsequent assignment to Metropolitan were valid and enforceable and that Metropolitan was entitled to collect the $650.00 payments due and owing to it from Lytle directly from Commercial Union.

On January 13, 2000, Plaintiffs commenced this action seeking a declaration that the purported assignments between Lytle and Woodbridge and between Woodbridge and Metropolitan are void and unenforceable, as is the judgment of the Washington state court. Following the filing of their Answer to the Complaint [1], the plaintiffs and defendants Metropolitan and Woodbridge both move for summary judgment in their favor.

### Standards of Review on Summary Judgment

The standards to be applied by the district courts in ruling on motions for summary judgment are set forth in Fed. R.Civ.P. 56. Under subsection (c) of that rule,

. . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Pursuant to this rule, a court is compelled to look beyond the bare allegations of the pleadings to determine if they have

---

1. As in the Washington Superior Court action against him, Mr. Lytle has failed to appear and/or defend in this action as well.

sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287 (D.C.Cir.1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988); *Aries Realty, Inc. v. AGS Columbia Associates,* 751 F.Supp. 444 (S.D.N.Y.1990). Generally, the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a summary judgment motion, the court must view the facts in the light most favorable to the non-moving party and all reasonable inferences from the facts must be drawn in favor of that party as well. *Troy Chemical Corp. v. Teamsters Union Local No. 408,* 37 F.3d 123, 126 (3rd Cir.1994); *U.S. v. Kensington Hospital,* 760 F.Supp. 1120 (E.D.Pa. 1991); *Schillachi v. Flying Dutchman Motorcycle Club,* 751 F.Supp. 1169 (E.D.Pa. 1990). *See Also: Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3rd Cir. 1989); *Tziatzios v. U.S.,* 164 F.R.D. 410, 411, 412 (E.D.Pa.1996). "Material" facts are those facts that might affect the outcome of the suit under the substantive law governing the claims made. An issue of fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" in light of the burdens of proof required by substantive law. *The Philadelphia Musical Society, Local 77 v. American Federation of Musicians of the United States and Canada,* 812 F.Supp. 509, 514 (E.D.Pa. 1992) citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 252, 106 S.Ct. 2505, 2510, 2512, 91 L.Ed.2d 202 (1986).

### Discussion

By their motion, the plaintiffs assert that they are entitled to judgment in their favor as a matter of law because the defendants purposely violated a valid and binding contract between Plaintiffs and Lytle by executing a purported assignment of Lytle's rights to receive the periodic payments due under his structured settlement agreement. Defendants, in turn, argue that the assignment should be upheld because: Plaintiffs lack standing to invoke an anti-assignment provision that appears solely in a contract to which they are not a party, the anti-assignment clause in the settlement agreement is unenforceable under the Uniform Commercial Code and Plaintiffs' contention that an assignment could cause them harm through supposed adverse tax consequences is contrary to Third Circuit law.

Plaintiffs brought this action pursuant to the Court's diversity jurisdiction, 28 U.S.C. § 1332 and 28 U.S.C. § 2201 seeking declaratory relief. Specifically, Section 2201 states, in relevant part:

(a) In a case of actual controversy within its jurisdiction, . . . . as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

■ A federal court thus has the discretion to entertain a declaratory judgment action when it finds that the declaratory relief sought "(i) will serve a useful purpose in clarifying and settling the legal relations in issue; and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Icarom, PLC v. Howard County, MD.,* 904 F.Supp. 454, 458 (D.Md. 1995), quoting *Continental Casualty Co. v. Fuscardo,* 35 F.3d 963, 966 (4th Cir.1994); *Bortz v. DeGolyer,* 904 F.Supp. 680, 684 (S.D.Ohio 1995).

While federal law will be applied and will control whether or not the court can render a declaratory judgment, state law is to be applied to the underlying substantive issues. *Britamco Underwriters, Inc. v. C.J.H., Inc.*, 845 F.Supp. 1090, 1093 (E.D.Pa.1994), *aff'd*, 37 F.3d 1485 (3rd Cir.1994). Under the Declaratory Judgment Act, declaratory relief is appropriate where there is a substantial controversy of sufficient immediacy and reality between parties having adverse legal interests. *Id.*, citing *Maryland Casualty Company v. Pacific Coal & Oil Company*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

In this case then, we apply general Pennsylvania legal principles of contract interpretation. Pennsylvania has long held that when two or more writings are executed at the same time and involve the same transaction, they should be construed as a whole. If the writings pertain to the same transaction, it does not matter that the parties to each writing are not the same. *Sanford Investment Company, Inc. v. Ahlstrom Machinery Holdings, Inc.*, 198 F.3d 415, 421 (3rd Cir.1999); *Western United Life Assurance Co. v. Hayden*, 64 F.3d 833, 842 (3rd Cir.1995); *Black v. T.M. Landis, Inc.*, 280 Pa.Super. 621, 421 A.2d 1105, 1107 (1980). This general rule also applies where several agreements are made as part of one transaction even though they are executed at different times. *Hayden*, citing *Neville v. Scott*, 182 Pa.Super. 448, 127 A.2d 755, 757 (1956).

A contract must first be examined for any ambiguities, i.e., whether it is susceptible to reasonable alternative interpretations and this is a question of law for the Court to decide. *Sanford*, 198 F.3d at 421, citing *Duquesne Light Co. v. Westinghouse Electric Corp.*, 66 F.3d 604, 613 (3rd Cir.1995). In determining whether a contract is ambiguous, the court "assumes the intent of the parties to an instrument is embodied in the writing itself and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." *Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3rd Cir.1994). This does not mean, however, that the court is confined to the four corners of the written document. *Id.* Rather, the court reads the contract in the context in which it was made. Therefore, to determine the parties' intentions, the court may consider, among other things, the words of the contract, the alternative meaning suggested by counsel and the nature of the objective evidence to be offered in support of that meaning. *Pacitti v. Macy's*, 193 F.3d 766, 773 (3rd Cir.1999). *See Also: Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 (3rd Cir.1980).

In this case, the Settlement Agreement and Release, the Qualified Assignment and the Annuity were all made within several weeks of one another and all clearly were made as part of one transaction as none of these documents would have been executed save for the others. In examining all three documents and the context in which they were executed, we find no ambiguities in either the Settlement Agreement and Release, the Uniform Qualified Assignment or the Annuity itself. Indeed, it appears obvious to this Court that the Settlement Agreement contemplated that Mr. Lytle would receive a structured settlement within the meaning of the Internal Revenue Code and that he understood and agreed that Home Insurance Company would assign its rights under the Settlement Agreement to CGU Annuity Service Corporation, which, in turn, would purchase an annuity from the CGU Life Insurance Company to fund the payment of his periodic monthly payments of $1,200.82 and his two guaranteed lump sum payments of $5,000. As part of this Settlement Agreement, Mr. and Mrs. Lytle agreed that they would not assign their rights to the periodic payments or otherwise seek to accelerate the payments. It is further clear that neither Mr. nor Mrs. Lytle had any ownership or other rights or interest in the annuity itself other than to

the receipt of the payments as agreed. Thus, to the extent that any assignments could be made under the annuity, the only party which could make such an assignment was CGU Annuity Service Corporation, as its owner. We therefore find that the Settlement Agreement, the Uniform Qualified Assignment and the Annuity are all valid and enforceable contracts and we thus turn now to an examination of Defendants' arguments as to why the anti-assignment provision should not be enforced.

■ As noted above, Defendants first challenge the plaintiffs' standing to invoke an anti-assignment provision that appears solely in a contract to which they are not a party, i.e., the settlement agreement.

■ As a general rule, contract law protects the expectation interests of contracting parties based on a voluntary agreement that defines their relationship. Protection is limited to those individuals specifically named in the contract and enforcement is based on the manifestation of intent between the parties. *Hahn v. Atlantic Richfield Co.*, 625 F.2d 1095, 1104 (3rd Cir.1980). Where, however, an assignment is effective, the assignee stands in the shoes of the assignor and assumes all of his rights. *Smith v. Cumberland Group Ltd.*, 455 Pa.Super. 276, 285, 687 A.2d 1167, 1172 (1997). *See Also: Adamski v. Allstate Insurance Co.*, 738 A.2d 1033, 1039 (Pa.Super.1999); *Davis v. Browning–Ferris, Inc.*, 1998 WL 964190 (E.D.Pa.1998). Therefore, the assignee is the real party in interest and an action on the assignment must be prosecuted in his name. *Wilcox v. Regester*, 417 Pa. 475, 480, 207 A.2d 817, 820 (1965); *Sanford Investment Company, Inc. v. Ahlstrom Machinery Holdings, Inc.*, 1998 WL 761876 *2 (E.D.Pa.1998).

In this case, the Plaintiffs expressly acknowledged and agreed in the settlement agreement that the Home Insurance Company, on behalf of David Eddy and Delaney Moving, Inc. ("Defendants"), would assign their obligation to make the periodic payments to Plaintiffs to CGU Annuity Service Corporation and that Defendants and CGU Annuity Service reserved the right to purchase an annuity policy to fund these payments from CGU Life Insurance Company.[2] (*See:* Paragraphs 5.0, 5.1, 5.2 and 6.0 of the Settlement Agreement and Release, attached as Exhibit "A" to Plaintiffs' Complaint). The assignment from Home to CGU Annuity was accomplished on October 13, 1987 with the execution of the Uniform Qualified Assignment (Exhibit "B" to Plaintiffs' Complaint) and CGU Annuity purchased the annuity contract at issue from CGU Life on October 16, 1997. We therefore find that Plaintiffs effectively stepped into the shoes of Home with relation to the settlement agreement and that they have standing, as Home's assignee, to seek to enforce the anti-assignment clause.

■ Defendants next argue that, regardless of Plaintiffs' standing to enforce the anti-assignment provision in the Settlement Agreement, that provision is unenforceable pursuant to Section 9–318(4) of the Uniform Commercial Code. That section states:

**(d) Contract term prohibiting assignment ineffective.**-A term in any contract between an account debtor and an assignor is ineffective if it prohibits assignment of an account or prohibits creation of a security interest in a general intangible for money due or to become due or requires the consent of the ac-

2. In October, 1999, the Boards of Directors and the Delaware Department of Insurance approved the name changes of both CU Annuity Service Corporation and Commercial Union Life Insurance of America to CGU Annuity Service Corporation and CGU Life Insurance Company of America. *See,* Exhibit "A" to Plaintiffs' Memorandum of Law in Op-

position to Defendants' Cross–Motion for Summary Judgment and in Reply to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment. It is thus clear that CU Annuity Service Corporation and Commercial Union Life Insurance Company of America are in fact the same entities as the plaintiffs here.

count debtor to such assignment or security interest.

*See:* 13 Pa.C.S.A. § 9318(d).

According to the plaintiffs, this argument should be rejected because Article 9 of the U.C.C. is inapplicable to sales transactions such as the one between Lytle and Woodbridge and the subject transaction is exempt as a matter of law under 13 Pa.C.S.A. § 9104(7), which provides that Article 9 does not apply "to a transfer of an interest or claim in or under any policy of insurance, except as provided with respect to proceeds (section 9306) and priorities in proceeds (section 9312)."

It has been said that Section 9104 of the Uniform Commercial Code excludes twelve types of transactions from the scope of Article 9. Section 9104's exclusions fall generally under three categories: first, transactions that are subject to overriding governmental interests; second, transactions that are nonconsensual; and third, transactions that are out of the mainstream of commercial financing. *In Re Bell Fuel Corporation,* 99 B.R. 602, 605 (E.D.Pa.1989). Section 9104(7) falls within the third category. *Id., aff'd* 891 F.2d 281 (3rd Cir.1989). As Comment 7 to § 9–104 recognizes:

> Rights under life insurance and other policies, and deposit accounts, are often put up as collateral. Such transactions are often quite special, do not fit easily under a general commercial statute and are adequately covered by existing law. Paragraphs (g) and (*l*) make appropriate exclusions, but provision is made for coverage of deposit accounts and certain insurance money as proceeds.

Proceeds are defined as including

> whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts and the

like are "cash proceeds." All other proceeds are "noncash proceeds."

13 Pa.C.S.A. § 9306(a).

In this case, the payments to which the defendants claim entitlement were generated by the settlement of a personal injury action funded by a liability insurance policy issued by the Home Insurance Company to David P. Eddy and Delaney Moving, Inc. In lieu of making a lump sum payment to defendant Lytle, the Home Insurance Company, with Lytle's agreement and consent, assigned its rights and then had its assignee purchase the annuity out of which the periodic payments at issue are funded. Mr. Lytle had no security interest in the payments or in the annuity and we therefore find that while the periodic payments clearly represent an interest which he had under an insurance policy, the periodic payments do not constitute "proceeds" within the meaning of § 9306(a).

■ What's more, although annuity contracts differ in important respects from life insurance policies, the Pennsylvania statutes governing insurance place annuity contracts under the authority and jurisdiction of the Insurance Department. *See, e.g.,* 40 P.S. § 506.1, *et. seq.;* 40 P.S. § 625–1, *et. seq.* Thus, we find that Article 9 of the Uniform Commercial Code does not apply in this case. *See Also: Liberty Life Assurance Company of Boston v. Stone Street Capital, Inc.,* 93 F.Supp.2d 630, 638 (D.Md.2000); *Grieve v. General American Life Insurance Company,* 58 F.Supp.2d 319, 324 (D.Vt.1999).

■ Defendants next contend that under Third Circuit law, Lytle's conveyance of his rights under the settlement agreement is effective, notwithstanding the anti-assignment provision. In support of this argument, Defendants cite the single case of *Bel–Ray Co. v. Chemrite (Pty) Ltd.,* 181 F.3d 435, 442 (3rd Cir.1999) in which the Third Circuit held that when a party to a contract assigns his rights to a third party in violation of a contract provision that

prohibits an assignment, the anti-assignment provision does not render the assignment void. In rendering its decision in that case, the Third Circuit applied New Jersey law and, given that New Jersey had adopted Restatement (Second) of Contracts § 322, it followed the general rule that contractual provisions limiting or prohibiting assignments operate only to limit a parties' right to assign the contract, and not their power to do so, unless the parties' manifest an intent to the contrary with specificity. Accordingly, breach of such a covenant (not to assign) may render the assigning party liable in damages to the non-assigning party but the assignment remains valid and enforceable. *Bel–Ray*, 181 F.3d at 442.

 In this case, the parties do not dispute that Pennsylvania law is to be applied. Under Pennsylvania law, an assignment is "a transfer or setting over of property, or of some right or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one whole interest in an estate, chattel, or other thing." *Fran and John's Doylestown Auto Center, Inc. v. Allstate Insurance Company*, 432 Pa.Super. 449, 452, 638 A.2d 1023, 1025 (1994), quoting *In re Purman's Estate*, 358 Pa. 187, 56 A.2d 86 (1948). While a contractual right to receive a future stream of payments is typically assignable, nonassignment clauses are also valid, although the Pennsylvania courts scrutinize them carefully by examining both the specific language used and the purposes for which they have been inserted. *See, e.g., Western United Life Assurance Company v. Hayden*, 64 F.3d 833, 841 (3rd Cir.1995); *National Mutual Aid Society v. Lupold*, 101 Pa. 111 (1882); *National Memorial Services, Inc. v. Metropolitan Life Insurance Co.*, 159 Pa.Super. 292, 48 A.2d 143 (1946), *opinion adopted and aff'd*, 355 Pa. 155, 49 A.2d 382 (1946); *Maxwell Stepanuk, Jr., D.O., P.C. v. State Farm Mutual Automobile Insurance Co.*, 1995 WL 553010 *4 (E.D.Pa.1995).

Thus far, nearly all of the reported Pennsylvania case law on the issue of the enforceability of nonassignment clauses has come in the context of insurance. In *National Memorial Services v. Metropolitan Life Insurance, supra*, the question facing the Court was the assignability of certain life insurance benefits in payment of an undertaker's bill. In holding that the nonassignment clause in that case was unenforceable, the Pennsylvania Superior and Supreme Courts noted that the event insured against had already occurred, i.e., the policyholder had died, the amount of the claim was determined and hence the risk of non-payment of premiums facing the insurer was no longer possible. Thus, reasoned the Courts, there no longer seemed to be any sound reason for the insurance company to limit or forbid an assignment by a beneficiary of an amount due him or her after the death of the insured and an assignment of the policy or rights thereunder after the occurrence of the event, which creates the liability of the insurer, could not be precluded. *Id.*, 49 A.2d at 383; *See Also: Viola v. Fireman's Fund Insurance Company*, 965 F.Supp. 654, 658 (E.D.Pa.1997)(events that gave rise to assignor's indemnity claims against defendant insurer occurred prior to his assignments of his rights to plaintiff); *Seasor v. Liberty Mutual Insurance Co.*, 941 F.Supp. 488 (E.D.Pa.1996), *aff'd* 116 F.3d 469 (3rd Cir.1997) (bad faith action against Liberty Mutual is contested matter where no right to payment has accrued); *Fran and John's Doylestown Auto Center, supra* and *High–Tech Enterprises, Inc. v. General Accident Insurance Co.*, 430 Pa.Super. 605, 635 A.2d 639 (1993)(owners of vehicles damaged in collisions both executed documents to assign to automobile repair shops their rights to payment from insurance companies for property damage to vehicles before insurers had agreed to damage estimates).

Similarly, in *Continental Casualty Co. v. Diversified Industries, Inc.*, 884 F.Supp. 937 (E.D.Pa.1995), Judge Cahn held that

the nonassignment clauses at issue in that case did not preclude the insured from assigning its rights under his policies without the consent of the insurer because "the injury which could potentially place liability upon the plaintiff companies had occurred prior to the assignment." 884 F.Supp. at 948. The Court further reasoned,

> "[b]ecause the assignment did not increase the amount of risk which the CNA Companies will face, but merely changed the name of the party to whom any payment may be made, it passes muster under *National Memorial.*"

In this case, it is clear from the language of the Settlement Agreement and the Uniform Qualified Assignment that the parties intended to enter into a structured settlement in accordance with §§ 104(a)(2) and 130 of the Internal Revenue Code, 26 U.S.C. §§ 104(a)(2), 130. (*See, e.g.,* Settlement Agreement and Release, ¶ 5.1; Uniform Qualified Assignment, ¶ 2). As explained by the Third Circuit in *Western United Life Assurance Co. v. Hayden, supra,*

> Structured settlements are a type of settlement designed to provide certain tax advantages. In a typical personal injury settlement, a plaintiff who receives a lump-sum payment may exclude this payment from taxable income under I.R.C. § 104(a)(2) (providing that the amount of any damages received on account of personal injuries or sickness are excludable from income). However, any return from the plaintiff's investment of the lump-sum payment is taxable investment income. In contrast, in a structured settlement the claimant receives periodic payments rather than a

lump sum, and all of these payments are considered damages received on account of personal injuries or sickness and are thus excludable from income.

64 F.3d at 839.

Under § 130 of the Internal Revenue Code, insurance companies, like Plaintiffs here, who assume the liability to make periodic payments on account of a personal injury are eligible for favorable tax treatment if certain conditions (one of which is non-assignability of the periodic payments) are satisfied. *Liberty Life Assurance Company of Boston v. Stone Street Capital, Inc.,* 93 F.Supp.2d 630, 634–635 (D.Md. 2000). In the absence of the favorable tax treatment, however, Plaintiffs may have to immediately report as income all of the funds which it received from Home Insurance to fund the purchase of the annuity and they would not be entitled to deductions until they subsequently made the periodic payments. *Id.* Thus, in this case, the potential for increased tax liability is the risk which the anti-assignment clause was designed to protect against. Indeed, it appears that for the assignment from Home to CGU Annuity Service Corp. to constitute as a "Qualified Assignment" under 26 U.S.C. § 130(c), the anti-assignment clause was required. Accordingly, we conclude that a sound and valid reason existed and continues to exist for the anti-assignment clause to be included in the Settlement Agreement. Under Pennsylvania law, it is therefore properly enforced.[3]

For all of the foregoing reasons, we shall grant the Plaintiffs' motion for summary judgment and declare that the anti-assignment clause in the settlement agreement is enforceable and that as against the Plain-

---

**3.** In so holding, we reject Defendants' argument that the Third Circuit in *Western Life Assurance Co. v. Hayden, supra,* squarely rejected the proposition that Lytle's conveyance of his rights under the settlement agreement could subject the plaintiffs to adverse tax consequences. To be sure, the Court of Appeals did discuss the characteristics inherent in structured settlements under Sections 104 and 130 of the Internal Revenue Code; the basis for the Court's rejection of the argument against upholding the assignment of periodic payments in that case was. the ambiguities inherent on this point in the settlement agreement. Unlike the case at bar, there is no evidence that either the settlement agreement, qualified assignment or the annuity in that case contained an anti-assignment provision at all.

tiffs, that portion of the Washington Superior Court Judgment of November 17, 1999 decreeing that Defendant Metropolitan is entitled to collect five payments of $650.82 for the months of July, August, September, October and November, 1999 directly from Plaintiffs is null and void.

An order follows.

### ORDER

AND NOW, this day of February, 2001, upon consideration of the Cross–Motions for Summary Judgment of Plaintiffs and Defendants Metropolitan Mortgage & Securities Co., Inc. and Woodbridge Sterling Capital LLC, it is hereby ORDERED that the Plaintiffs' Motion is GRANTED, the Defendants' Motion is DENIED, the anti-assignment clause in the settlement agreement between Defendant Lester E. Lytle, Jr. and Home Insurance Company is ENFORCEABLE by Plaintiffs against Defendants and that portion of the Judgment of November 17, 1999 of the Washington Superior Court for Spokane County decreeing that Defendant Metropolitan is entitled to collect five payments of $650.82 for the months of July, August, September, October and November, 1999 directly from Plaintiffs is null and void.