J-A09036-21

2021 PA Super 96

| | | |
|---|---|---|
| ZACHARY BARBER, JEFFREY BARBER, ADMINISTRATOR OF THE ESTATE OF LINDA LEE JENKINS A/K/A/ LINDA LEE BARBER, DECEASED | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| | : | No. 615 WDA 2020 |
| BRUCE STANKO, NORTH HILLS PHARMACY SERVICES, LLC; PACERCHECK, INC.; ET AL | : : : : : : | |
| APPEAL OF: SEMPRA FINANCE, LLC ("SEMPRA") | : : | |

Appeal from the Order Entered June 5, 2020
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  No. 4037 of 2005

BEFORE:   STABILE, J., MCCAFFERY, J., and PELLEGRINI, J.[*]

OPINION BY PELLEGRINI, J.:                    **FILED: MAY 14, 2021**

Sempra Finance, LLC (Sempra) appeals from the order entered in the Court of Common Pleas of Allegheny County (Allegheny County Orphans' Court) granting Zachary Barber's motion to coordinate a Butler County case in Allegheny County pursuant to Pennsylvania Rule of Civil Procedure 213.1.[1]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Pennsylvania Rule of Civil Procedure 213.1, Coordination of Actions in Different Counties, provides, in pertinent part:

> (a) In actions pending in different counties which involve a common question of law or fact or which arise from the same

*(Footnote Continued Next Page)*

The matters to be coordinated involve allegations about sales of certain annuities to be paid by Zachary Barber (Zachary) to Sempra that were purportedly approved in the Court of Common Pleas of Butler County but were created by structured settlement agreement approved by Allegheny County Orphans' Court when Zachary was a minor.

While what is before us involves a narrow procedural question involving whether the Allegheny County Orphans' Court properly coordinated these actions, it is necessary to have an understanding of the requirements that need to be met to transfer payments under the Pennsylvania Structured Settlement Protection Act (SSPA), 40 P.S. §§ 4001-4009, as well as a review of the underlying facts.

**I.**

**A.**

Structured settlements were rare until a series of IRS rulings in the late 1970s declared that periodic payments in structured settlements would not be subject to federal income tax. Congress effectively codified these administrative rulings with the passage of the Periodic Payment Settlement

---

transaction or occurrence, any party, with notice to all other parties, may file a motion requesting the court in which a complaint was first filed to order coordination of the actions. …

Pa.R.C.P. No. 213.1(a).

Act of 1982. **See** PUBLIC LAW 97-473—JAN. 14, 1983.[2] The passage of this Act incentivized plaintiffs to forgo a lump-sum payment in favor of a structured settlement to provide tort victims with long-term economic security by providing guaranteed income with spendthrift protection.

While structured settlements provided those benefits, payees of structured settlements were precluded from securing a lump-sum payment by cashing in their remaining payments to take care of current needs or wants, real or imagined. Like all things involving substantial sums of money and wants and desires, there developed an industry to allow plaintiffs to "change their minds" and transfer their payments to a factoring company who offered less than the present value of those payments. The practice of structured settlement transfers raised a concern that personal injury claimants are being exploited by factoring companies that take advantage of vulnerable and unsophisticated claimants. **See Johnson v. Structured Asset Services,**

---

[2] While a personal injury plaintiff who receives a lump sum payment may exclude that payment from taxable income under 26 U.S.C. § 104(a)(2), any future return from the plaintiff's investment of the lump-sum payment is treated as taxable investment income. In contrast, all the structured settlement payments that are received on account of personal injuries are excludable from income such that a structured settlement effectively shelters from taxation the return from the investment of the putative lump-sum payment. **See Western United Life Assurance Company v. Hayden**, 64 F.3d 833, 839 (3rd Cir.1995); **CGU Life Insurance Company of America v. Metropolitan Mortgage & Securities Co., Inc.**, 131 F.Supp.2d 670, 679 (E.D. Pa. 2001).

*LLC*, 148 S.W.3d 711, 728 (Tex.App.2004) ("Because the underlying purpose of a structured settlement is not only to compensate an injured party but also to protect that party from his own improvidence, a number of commentators, courts, and legislatures have become concerned by the growing number of companies, sometimes called 'factoring companies,' that purchase structured settlements from a personal injury victim by paying him immediate cash for the right to future payments under the settlement.").

On account of these concerns, Congress amended the Internal Revenue Code in 2002 to impose "a tax equal to 40 percent of the factoring discount" upon any person or entity "who acquires directly or indirectly structured settlement payments rights in a structured settlement factoring transaction...." 26 U.S.C. § 5891(a).[3] However, a statutory exception to that

---

[3] Pursuant to 26 U.S.C. § 5891, structured settlement factoring transactions:

> **(a) Imposition of tax.**--There is hereby imposed on any person who acquires directly or indirectly structured settlement payment rights in a structured settlement factoring transaction a tax equal to 40 percent of the factoring discount as determined under subsection (c)(4) with respect to such factoring transaction.
>
> **(b) Exception for certain approved transactions.**—
>
>     **(1) In general.**--The tax under subsection (a) shall not apply in the case of a structured settlement factoring transaction in which the transfer of structured settlement payment rights is approved in advance in a qualified order.

*(Footnote Continued Next Page)*

tax has been created for any transfer of structured settlement payment rights that is approved in advance by a qualified court order. *See* 26 U.S.C. § 5891(b)(1). To constitute a "qualified order" under Section 5891 to avoid paying a 40 percent tax on the factoring discount amount, any company wishing to purchase a payee's structured settlement rights must secure a court order concluding that the transfer is in the payee's best interests.

Like almost all states, Pennsylvania has adopted the SSPA to functionally allow the transfer of structured settlement payments. It provides, among other things, that, "[n]o transfer of structured settlement payment rights shall be effective ... unless the payee has filed a petition requesting such transfer and the petition has been granted by final order or decree of a court of competent jurisdiction based on such court's express written findings

---

**(2) Qualified order.**--For purposes of this section, the term "qualified order" means a final order, judgment, or decree which—

**(A)**finds that the transfer described in paragraph (1)

**(i)** does not contravene any Federal or State statute or the order of any court or responsible administrative authority, and

**(ii)** is in the best interest of the payee, taking into account the welfare and support of the payee's dependents[.]

26 U.S.C. § 5891(a), (b)(1), (2)(A)(i)(ii).

that .... [t]he payee has established that the transfer is in the best interests of the payee or his dependents." 40 P.S. § 4003(a)(3).

It has been said that the SSPA places the common pleas court in "position of a guardian of a person who stands in the presumptive position of the defenseless recipient of a benefit. It is for the Court to determine, as a guardian would, on an independent basis, whether the transaction serves the best interests of an unsophisticated (if not incompetent) person" and "is to ensure that an otherwise financially defenseless and possibly injured individual would receive a regular, sustaining source of income." *In re Jacobs*, 936 A.2d 1156, 1160 (Pa. Super. 2007).

Requiring a judge to serve as guardian to protect the interests places the judge in unfamiliar territory. Generally, the petition to transfer payment is unopposed, with plaintiff-payee wanting to transfer payments so that it can receive payments for what he or she considers in its best interests, whether it is or not, and the factoring company wanting it approved so it can make the most money. That requires the trial judge to make an independent determination of whether the sale is in the best interests of the plaintiff-payee based on economic factors that it is not within its ken and with parties who are not that forthcoming. Moreover, this determination is made even more difficult because the proceedings are non-adversarial, with no factual development and competing positions to inform its judgment as would be the usual. It depends on the forthrightness and good faith of counsel to provide

all the information available for the judge to make an informed decision on what is in the best interests of the plaintiff-payee to avoid fraud on the court.

While 40 P.S. § 4003 sets forth several conditions that must be met before a transfer can be approved, other sections are pertinent here. Section 4004 of the SSPA, 40 P.S. § 4004, provides that the petition to transfer structured settlement payments shall be filed where the payee is domiciled; another of those conditions requires that the transfer must also be "expressly approved in writing by ... any court or responsible administrative authority that previously approved the structured settlement." 40 P.S. § 4003(a)(5)(i)(B). This approval is required because they are commonly used to resolve tort claims of minors, as well as adults who have suffered injuries that have rendered them legally incompetent, before any transfer can be effectuated.

Now to the underlying facts.

**B.**

In 2005, Zachary, when he was less than three years old, was in a car crash in which his mother was killed. Zachary's father, Jeffrey Michael Barber, Jr. (Father), filed a wrongful death lawsuit against the driver in the Court of Common Pleas of Allegheny County on behalf of Zachary and himself at Case

No. GD 05-2884 ("Wrongful Death Action").[4]  Father was to receive a lump of $471,950.00, along with various future lump-sum payments and monthly income until he reached the age of 40.

Because Zachary was a minor, any settlement had to be approved by the Allegheny County Orphans' Court.  On July 6, 2005, the Allegheny County Orphans' Court approved a structured settlement (Settlement Approval Order) for Zachary as part of the personal injury action settlement.  The Settlement Approval Order provided for distribution of approximately $2,700,000.00 to Zachary by Prudential Insurance Company of America and Travelers Life and Annuity in 58 separate payments from February 7, 2020, when he turned 18 until February 7, 2031, when he turned 29.  He also was to receive a balance of $869.00 that was to be placed in a federally insured certificate of deposit, "until he reaches the age of majority or by further order of this [c]ourt."[5] (Order, 7/06/05, at 2-3).

---

[4] The Defendants listed in the caption were the defendants involved in the car accident.

[5] The quoted restrictive language is required by Allegheny County Local Rule 2039 when "the proceeds of settlement are to be deposited in a savings account or in a certificate of deposit."  Allegheny County Local Rule 2039.

**C.**

In 2012, Father began selling Zachary's annuities.[6]  In total, Father sold $1,570,000.00 of the annuities for a total purchase price of $822,673.41.  To carry out those transfers, Father and Pinnacle Capital, LLC (Pinnacle) filed three petitions pursuant to the Pennsylvania Structured Settlement Protection Act (SSPA), 40 P.S. §§ 4001-4009.[7]

_____

[6] Four petitions were filed in the Butler County Court of Common Pleas between 2007 through 2012 seeking the approval of the sale of Father's annuities to Stone Street.  Three of the petitions represent that Father would use the money to start a business.  (Second Amended Petition, 2/02/20, at 11).  The fourth petition filed in May 2012 states that Father would use the money to pay off a loan and to make home improvements.  (*See id.*).  Each of the petitions to sell Father's annuities were granted.  (*See id.*).  Through those sales, Father depleted most of his structured settlement by the end of 2012.  (*See id.*).

[7] Section 4003(a) of the SSPA provides in pertinent part that:

> No transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment to any transferee of structured settlement payment rights unless the payee has filed a petition requesting such transfer and the petition has been granted by final order or decree of a court of competent jurisdiction based on such court's express written findings that … [t]he payee has received or expressly waived in a separate written acknowledgment signed by the payee, independent legal advice regarding the implications of the transfer, including consideration of the tax ramifications of the transfer.

40 Pa.C.S. § 4003(a)(4).

*(Footnote Continued Next Page)*

9

**D.**

The first petition seeking to sell the structured settlement was filed in 2012 by Father and Pinnacle in the Butler County Court of Common Pleas for the transfer of $600,000.00 of the annuity to Pinnacle for $307,673.41. In his petition, Father represented that he resided in Butler County. The 2012 Butler County petition alleged that Father intended to use the lump sum payment to "purchase his home outright" and to put it in Zachary's name. The Butler County Court of Common Pleas, by Judge Michael Yaeger, denied the petition as not being in Zachary's best interest.

Notwithstanding that the petition was denied in Butler County, 41 days later, Father and Pinnacle filed a nearly identical petition in the Beaver County Court of Common Pleas. In this petition, Father represented that he resided in Beaver County. Neither party informed the court that the earlier petition had been denied by the Butler County Court of Common Pleas. The petition also did not mention that the structured settlement was created by the Allegheny County 2005 Settlement Approval Order. On May 21, 2013, the

---

"Payee" is defined as "[a] person domiciled in this Commonwealth who is receiving tax-free payments under a structured settlement and proposes to make a transfer of payment rights thereunder." 40 P.S. § 4002.

Father filed the petition in his own name and as guardian of Zachary. Even though there was an apparent conflict between Zachary and Father's interest, Zachary was not appointed separate representation in any of proceedings seeking to sell his annuities to fund his Father's obligations.

Beaver County Court of Common Pleas approved the transfer. The court

specifically found, in pertinent part, that:

(1) the Payee, [Father], as Parent and Natural Guardian of [Zachary], a minor, has established that the transfer is in the best interests of the payee or the payee's dependents;

(2) based on the certification by an attorney for the transferee, and the court having not been made aware of any statute, regulation or order that would be incompatible with the proposed transfer, the transfer will not contravene any applicable federal or state statute or regulation, or the order of any court or administrative authority;

(3) the transfer complies with the remaining requirements of the [SSPA], including Sections 3(a)(2), 3(a)(4), 3(a)(5) and 3(a)(6);

(4) the payments that are to be transferred are designated as follows: one lump sum payment of $425,000.00 due and payable on February 7, 2020; and one lump sum payment in the amount of $175,000.00 due on February 21, 2020, to Pinnacle's Designated Assignee, Michael J. Pickett[;]

* * *

(5) the payee shall receive from the transferee the amount of $307,673.41, from which no funds are owed for counsel fees, administrative fees, or other costs, fees or expenses.

(Beaver County Order, 5/21/13). No mention of or approval for this transfer

was sought or received from the Allegheny County Orphans' Court.

**E.**

On January 25, 2016, Beaver County Court of Common Pleas approved

another petition to transfer $250,000.00 of Zachary's structured settlement

to Habitus Funding, as assignee of Pinnacle, in exchange for the lump sum

payment of $175,000.00 to Father, as parent and natural guardian of

Zachary.[8] (**See** Beaver County Order, 1/25/16). Again, there was no mention in the petition of the Settlement Approval Order and no approval was sought or received from the Allegheny County Orphans' Court.

**F.**

On February 5, 2018, Sempra and Father filed a joint SSPA petition in Butler County Court of Common Pleas seeking to transfer a $720,000.00 annuity owned by Zachary to Sempra for $275,000.00 (Butler County Petition). The Butler County Petition did not mention that the structured settlement was created by the Settlement Approval Order. At the hearing on the Butler County Petition, Father testified to the following:

- No previous transfers of Zachary's structured settlement payments had occurred.

- Father and his wife struggled to make monthly mortgage payments on the family home in Butler County (the Property) where Zachary Barber resided.

- Father intended to use the payment from Sempra to pay off a high-interest mortgage encumbering the Property, which was in default.

- If the Butler County Petition were approved, Father would transfer title to the Property to Zachary when he became eighteen years old, and

---

[8] Pinnacle represents it paid the money for the annuities to a trust account controlled by Zachary's Guardian *Ad Litem* (GAL), Attorney Michael Pawk, although the Beaver County orders do not expressly reference that payment should be made to such an account.

- Father would transfer certain of the Property's oil and gas rights, which generated between $2,000.00 and $8,000.00 per month, to Zachary.

(**See** N.T. Butler County Transfer of Structured Settlement Hearing, 3/12/18, at 6, 9-10, 14-16).

In addition, Father and his wife testified that Zachary knew and approved of the proposed transfer and that it was in his best interest. (**See** **id.** at 26, 28). When Judge Yeager was not satisfied with the rate of return or that Father "was taking [his] son's money to do this," Sempra increased the purchase price to $340,000.00. (**Id.** at 19); (**see id.** at 27).

On April 18, 2018, Judge Yeager entered an order approving the Butler County Petition, finding, in relevant part:

> 3. [Father] has established the Proposed Transfer is in his best interest or in the best interest of Zachary [and his] dependents, if any.
>
>         \*    \*    \*
>
> 9. Pursuant to 26 U.S.C. § 5891, the Proposed Transfer does not contravene any federal or state statute or the order of any court or responsible administrative authority, and is in the best interest of Zachary [], taking into account the welfare and support of his dependents, if any.
>
> 10. Sempra intends to assign all of its rights, title and interest in and to the Assigned Payments to Habitus Funding ("Assignee").
>
>         \*    \*    \*
>
> J. In consideration for the Assigned Payments, Sempra shall remit a check in the amount of $340,000.00 made payable to "Jeffrey Barber and his attorneys, Lutz & Pawk".

13

K. This order is a "Qualified Order" within the meaning of 26 U.S.C. § 5891.

(Butler County Order, 4/18/18).

Judge Yeager based his decision on Father's representations and subject to the terms and conditions of the Deed of Trust between Father and his wife and Father as Trustee for the benefit of Zachary. Pursuant to the Deed of Trust, Father and his wife agreed to convey the Property and all gas rights and royalty interests associated with the Property to Father as Trustee for Zachary's benefit, effective April 16, 2018. (*See id.* attached Deed of Trust, Schedule A). On May 2, 2018, pursuant to the Butler County order's terms, Sempra issued a wire transfer in the amount of $340,000.00 to Father's attorneys.

**G.**

On January 31, 2020, Zachary's paternal grandparents, on his behalf, presented a first emergency motion for rule to show cause in the Allegheny County Orphans' Court. (First Emergency Motion). Contrary to Father's testimony at the March 18, 2018 Butler County hearing that Zachary previously was aware of the annuity transfers, Zachary stated that it was not until 2020, shortly before his 18th birthday that he first learned of the sale of over $1.5 million of his annuities. The First Emergency Motion, which named Pinnacle and Father, sought to enforce the July 5, 2005 Settlement Approval Order and a declaratory judgment that any sale of Zachary's future settlement

14

payments was void and any future payments solely his property. The First

Emergency Motion alleged that:

- As a result of his mother's death, Zachary was awarded a confidential seven-figure settlement;

- Father had kept all information about the settlement from Zachary;

- Father has consistently told Zachary that the money Zachary would receive in the settlement would be divided equally between the two of them;

- Father converted Zachary's future $500,000.00 payment into a present payment to himself of $175,000.00 without court approval or involvement;

- Father would attempt to access money belonging to Zachary for his own use and benefit when it became available to him on his eighteenth birthday, February 7, 2020;

- Zachary was in a situation that would lead to irreparable harm if he continued to reside with his father, and therefore had moved to his paternal grandparents' residence;

- Father has continually refused to share any information with Zachary about the settlement or to give him permission to speak with account managers;

- Although Zachary was to receive substantial monetary payments on February 7 and 21, 2020, Father had represented to him that he will receive $1,500.00 on his eighteenth birthday.

(**See** First Emergency Motion, 1/30/20, at 2, Paragraphs 6, 8-10, 12-13; 3,

Paragraphs 17-20). The First Emergency Motion also sought an order

"requiring future payments[, including the payments due on February 7 and

21, 2020,] be paid to the Prothonotary of the Court of Common Pleas and be

accessed only by Z.B. upon motion to this Honorable Court after he achieves the age of majority." (*Id.* at 3, Paragraph 20). The First Emergency Motion did not seek the return of the $340,000.00 already paid by Sempra to Father pursuant to the Butler County order.

Because the court "was shocked and seriously concerned about the allegations, which included violations of [statutes], forum shopping, and fraud[,]" the Allegheny County Orphans' Court entered an order on January 31, 2020, "out of an abundance of caution for the sole purpose of safeguarding [Zachary Barber's] funds until this matter could be properly adjudicated." (Orphans' Ct. Op., at 6). The order provided:

> unless and until otherwise ordered by the Court, Prudential Insurance Company of America and Travelers Life & Annuity Company, are hereby ORDERED to deposit with the Prothonotary of the Court of Common Pleas of Allegheny County any amounts payable for the benefit of Z.B., a minor. The Court further ORDERS, upon reaching the age of majority, Z.B. may file a motion seeking release of the funds being held.

(Order, 1/31/2020). This order had the effect of short-circuiting annuity payments now to be paid to Sempra and others when they became due under the structured settlement agreement even though they had already paid Father for assignment of those proceeds.

On February 3, 2020, Zachary 's grandparents filed a second emergency motion (Second Emergency Motion) naming Father, Pinnacle and Sempra. It alleged that the Butler County Court of Common Pleas relied on misrepresentations in Father's affidavit in support of the Butler County petition

16

in which he "falsely states that [Zachary] has never previously transferred rights under the structured settlement." (Second Emergency Motion, 2/02/20, at 14) (emphasis omitted); (*see id.* at Exhibit K, Butler County Petition, Barber, Jr. Affidavit, at 1, Paragraph 6). The Second Emergency Motion also averred that Father falsely stated in his Beaver County petition that he resided there when he did not. The grandparents sought an order voiding the May 21, 2013 and January 25, 2016 Beaver County orders, the April 18, 2018 Butler County order, and any other yet undiscovered orders related to Zachary's settlement funds. (*See id.* at 17). On March 13, 2020, Zachary filed a First Amended Petition (Amended Petition) substituting himself for his grandparents.

Sempra filed preliminary objections to the Amended Petition, arguing that Zachary's claims: (1) were an impermissible collateral attack on a final order entered in Butler County, a court of coordinate jurisdiction, and (2) were time-barred pursuant to 42 Pa.C.S. § 5505.[9]

On May 11, 2020, in light of the allegations made by Zachary and his grandparents, Sempra filed a petition to enforce the Butler County April 18, 2018 order (Butler County Petition to Enforce), asking that the Butler County Court of Common Pleas determine whether Father failed to comply with the

---

[9] "A court upon notice to the parties may modify or rescind any order within 30 days of its entry." 42 Pa.C.S. § 5505.

Butler County order and, if so, to compel him to transfer the Property to Zachary, along with any proceeds from the oil and gas rights since the order's entry, as well as any other appropriate relief, including sanctions. (**See** Butler County Petition to Enforce, 5/11/20, at 13). On May 17, 2020, Judge Yeager issued a rule requiring any party intending to respond to the Butler County Petition to Enforce to do so and scheduling a conference.

## H.

On May 19, 2020, Zachary filed a motion to coordinate the Allegheny Case seeking to transfer the Butler County case to the Allegheny County Orphans' Court (Motion to Coordinate). The Motion to Coordinate asserted that the "common question of law and fact in both actions is whether Judge Yeager's Order complies with the Pennsylvania Structured Settlement Protection Act." (Alleged Common Question). (Motion to Coordinate, 5/19/20, at 5, Paragraph 24). In its response, Sempra argued that the Allegheny County Orphans' Court lacked subject matter jurisdiction to modify or rescind the Butler County order due to the passage of time and the coordinate jurisdiction doctrine, and that the Butler County court was the only court with authority to enforce its April 18, 2018 order.

On June 1, 2020, the Allegheny County Orphans' Court heard argument on the Motion to Coordinate. As it explains in its opinion:

> Pa.R.C.P. 213.1 provides for the coordination of actions pending in different counties. It is ironic that Sempra would claim that there was no action pending in Butler County, when it was

Sempra that filed a Petition to Enforce April 18, 2018 Order on May 11, 2020, which resulted in the filing of the Motion for Coordination of Actions before this court. This court contacted Judge Yeager in Butler County and thoroughly discussed the fact that Allegheny County was the situs of the original Order dated July 6, 2005. Judge Yeager was in complete agreement that the proper venue for adjudicating all matters concerning Zachary Barber's annuities is Allegheny County.

Rule 213.1 directs the court to consider several matters when deciding in which county to proceed on an action "which arose from the same transaction or occurrence". This entire case is controlled by the July 6, 2005 order issued [in the] Allegheny County Court of Common Pleas. The fact that Sempra, and [] Pinnacle, went to the surrounding counties and circumvented Allegheny County does not result in Allegheny County losing jurisdiction; rather, it simply demonstrates that Sempra and Pinnacle were forum shopping, as they did not believe they would be successful in Allegheny County.

The question to be answered is: why is Sempra fighting jurisdiction in Allegheny County, noting that Pinnacle did not appeal the June 1, 2020 order? The only answer is Sempra is attempting to hide from Allegheny County, even though the entire matter started in Allegheny County and the July 6, 2005 Order specifically states "the funds are not to be withdrawn by the minor until he reaches the age of majority or by further order of this court," not the court in Beaver County or the court in Butler County.

19

(Orphans' Court Opinion, 9/21/20, at 4-5); (**see also** Order, 6/05/20, at 1).[10]

Sempra timely appealed[11] the Allegheny County Orphans' Court's June 1, 2020 order. It and the Allegheny County Orphans' Court have complied with Rule 1925(a). **See** Pa.R.A.P. 1925.

## II.

On appeal, Sempra argues that the Allegheny County Orphans' Court abused its discretion in granting the Motion to Coordinate because "(a) no 'question of fact or law' is common to the cases, (b) the Butler County case is

---

[10] Similarly, on June 4, 2020, Judge Yeager entered an order in Butler County directing that all proceedings filed in this matter are coordinated with the action in Allegheny County Orphans' Court, that the matter was transferred to Allegheny County, and that all further litigation in both matters shall be conducted in Allegheny County Orphans' Court. The order further cancelled any proceedings related to Sempra's Petition to Enforce and directed that "any and all actions on the underlying Structured Settlement, dissipation thereof, or expenditures therefrom are prohibited without further Order of Court from the Court of Common Pleas of Allegheny County, Pennsylvania." (Zachary Barber's Brief, at Appendix 4).

[11] On June 22, 2020, the Allegheny County Orphans' Court issued an order staying any open matters pending this appeal and directing that its January 31, 2020 order (that all settlement monies due Zachary be paid into the Allegheny County Prothonotary) remain in full force and effect. (**See** Order, 6/22/20); Pa.R.A.P. 1701(b)(1) ("After an appeal is taken … the trial court … may … [t]ake such action as may be necessary to preserve the *status quo*[.]"); (Orphans' Ct. Op., at 7). This stayed the Allegheny County Orphans' Court's consideration of related motions to dissolve the January 31, 2020 order and preliminary objections to Zachary's Amended Petition. Several parties have appealed the Allegheny County Orphans' Court's June 22, 2020 order at Docket Nos. 684, 702, 753 and 754 of 2020. These appeals and the court's June 22, 2020 order are not the subject of our review and will be addressed in a separate opinion.

not 'pending,' and (c) the orphans' court lacks subject matter jurisdiction over Zachary Barber's claims against Sempra." (Sempra's Brief, at 16) (unnecessary capitalization omitted).[12]

### A.

Sempra's first argument, broadly stated, is that the Allegheny County Orphans' Court abused its discretion in its consideration of the factors enumerated in Rule 213.1(c). Specifically, Sempra argues that there is no "common question" because, although both cases "touched upon the structured settlement approved by the orphans' court's July 6, 2005 order, the similarities end there." (*Id.* at 21). Sempra also explains that the Butler County case is closed other than its petition to enforce the April 18, 2020 order, so the only issue remaining in that case is whether Father violated the

---

[12] We review the court's order granting the Motion to Coordinate for an abuse of discretion.

> [w]here the record provides a sufficient basis to justify the order of coordination, no abuse of discretion exists. Whether we would have reached the same conclusion is immaterial. In exercising its discretion, the trial court should receive guidance not only from the enumerated [Rule 213.1(c)] criteria ... but also from the explanatory comment to Rule 213.1(c), which explains that the ultimate determination that the court must make is whether coordination is "a fair and efficient method of adjudicating the controversy."

***Pennsylvania Manufacturers' Ass'n Ins. Co. v. Pennsylvania State Univ.***, 63 A.3d 792, 794 (Pa. Super. Ct. 2013) (citation omitted).

April 18, 2018 Butler County order, and, if so, whether he should be held in contempt for violating it. It contends that these questions are not raised in Zachary's Amended Petition and, in fact, although the Motion to Coordinate asserted that the Alleged Common Question was whether Judge Yeager's April 18, 2018 order complies with the SSPA, this is not at issue in the Butler County case. (*See* Sempra's Brief, at 16, 20-21).

It also posits three further considerations[13] that supported the denial of the Motion to Coordinate. First, the SSPA required Sempra and Father to file the Butler County Petition in Butler County because it is the "court of common pleas of the judicial district in which the payee is domiciled." 40 P.S. § 4004. Second, Pinnacle, which is identified in Father's amended petition, is not a party in the Butler County case and, therefore, has no interest in the Petition to Enforce.

**1.**

We first address Sempra's claim that there is no "common question of law or fact." Pursuant to Rule 213.1(c):

> In determining whether to order coordination and which location
> is appropriate for the coordinated proceedings, the court shall
> consider, among other matters:

---

[13] Sempra presents these three considerations under the larger heading that there was no common issue of law or fact supporting the grant of the Motion to Coordinate. Although these arguments do not really go to that precise argument, we will address them in the order in which Sempra presented them.

(1) whether the common question of fact or law is predominating and significant to the litigation;

(2) the convenience of the parties, witnesses and counsel;

(3) whether coordination will result in unreasonable delay or expense to a party or otherwise prejudice a party in an action which would be subject to coordination;

(4) the efficient utilization of judicial facilities and personnel and the just and efficient conduct of the actions;

(5) the disadvantages of duplicative and inconsistent rulings, orders or judgments;

(6) the likelihood of settlement of the actions without further litigation should coordination be denied.

Pa.R.C.P. No. 213.1(c).

This Court has held that "the trial court must consider the enumerated factors but is free to consider other matters as well in making its determination." *Pennsylvania Manufacturers' Ass'n Ins. Co.*, *supra* at 796 (finding party's argument that trial court abused its discretion in considering "tangential considerations" beyond those enumerated in Rule 213.1(c) lacked merit because it conflicted with the Rule's plain language directing that court may consider "other matters."). Moreover, "Courts interpreting the [SSPA] have concluded that the statute is designed to protect beneficiaries of structured settlements from being taken advantage of by others." *See In re Benninger*, 357 B.R. 337, 351 (Bankr. W.D. Pa. 2006).

In this case, Sempra's Butler County Petition to Enforce requests a determination of whether Father has violated the Butler County order by not

transferring the agreed-upon Property and oil and gas rights in exchange for Zachary's annuities, *i.e.*, whether Zachary is being protected. The Emergency Petitions, Amended Petitions and Motion to Coordinate all allege malfeasance on behalf of Father, Sempra and Pinnacle in obtaining the proceeds of his structured settlement, *i.e.*, their failure to protect Zachary.

The Butler County Petition is part of the broad common question whether the purpose of the 2005 Settlement Approval Order is being met, *i.e.,* whether Zachary has been protected or if he has been taken advantage of to his great detriment, whether it be by Pinnacle obtaining the transfer of payment pursuant to the Beaver County orders, by Sempra obtaining transfer of payments in Butler County, or by Father obtaining Zachary's payments through misrepresentations, fraud and failure to obtain required approvals. Among other things, those common questions involve whether the Butler and Beaver County orders are ineffective and/or invalid due to the parties' failure to receive approval of the transfer of payments established by the 2005 Settlement Approval Order as required by 40 P.S. § 4003(a)(5)(i)(B); whether those orders were part of a fraudulent scheme to deprive Zachary of his payments under the 2005 Settlement Approval Order; and whether the parties to the action committed fraud on the court based on misrepresentations made to the court in obtaining approval. Accordingly, the Allegheny County Orphans' Court properly exercised its discretion when it found that there is a

question common in both the action before it as well as the Butler County action.

**2.**

Next, we turn to Sempra's argument that the SSPA required it to file the Butler County petition in Butler County.

Pursuant to Section 4004 of the SSPA, "[t]he court of common pleas of the judicial district in which the payee is domiciled shall have jurisdiction over any petition … for a transfer of structured settlement payment rights." 40 P.S. § 4004. Further, "[i]t is axiomatic that a court must have the power to enforce its own orders." ***Davin v. Davin***, 842 A.2d 469, 472 (Pa. Super. 2004). It is undisputed that Father resides in Butler County, Pennsylvania, and did so at the time the Butler County petition was filed.

While Sempra is correct that the petition to approve the transfer of the structured settlement payment rights was required to be filed in Butler County, and that the Butler County court had the right to enforce its April 2020 order, that does not mean that the Allegheny County Orphans' Court cannot alter it. First, we note that the Butler County Court of Common Pleas agreed to transfer consideration of the contempt petition to Allegheny County Orphans' Court because that is where the original Settlement Approval Order was approved.

Second, Allegheny County Orphans' Court's approval of the sale was required. 40 P.S. § 4003 (a)(5)(i) provides that:

25

No transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment to any transferee of structured settlement payment rights unless the payee has filed a petition requesting such transfer and the petition has been granted by final order or decree of a court of competent jurisdiction based on such court's express written findings that:

\*\*\*

(5) If the transfer would contravene the terms of the structured settlement:

(i) the transfer has been expressly approved in writing by:

\*\*\*

**(B) any court or responsible administrative authority that previously approved the structured settlement[.]**

40 P.S. § 4003 (a)(5)(i)(B) (emphasis added).

Sempra argues that the Allegheny County Orphans' Court's approval was not required pursuant to Section 4003(a)(5)(i)(B) because Judge Yeager made a finding that the proposed transfer did not contravene the terms of the structured settlement. This is a mischaracterization of Judge Yeager's finding. While his decision included boilerplate language contained in 26 U.S.C. § 5891, this language is found in the section about whether the court's orders were "Qualified Orders" for tax purposes and is not a finding regarding the 2005 Settlement Approval Order. *See* 26 U.S.C. § 5891. This is not surprising because it appears that the Butler County court was not made aware of the Allegheny County Orphans' Court's 2005 Settlement Approval Order.

26

Because Section 4003(a)(5)(i)(B) applied and it requires that the court that approved the structured settlement agreement must approve in writing the proposed transfer, the Allegheny County Orphan's Court was required to approve any changes in payments made under the 2005 Settlement Approval Order. *See In re Am. Dredging Co.*, 2011 WL 4971829, at *2 (E.D. Pa. Oct. 18, 2011)[14] (finding that sale of portion of settlement for a lesser lump sum than would have been realized if paid at the set disbursement date "would contravene the terms of that structured settlement agreement. Accordingly, pursuant to the language of the statute, [the court that approved the original settlement] must expressly approve[] in writing the transfer of structured settlement rights before the [another] court may grant its approval."). This

_____

[14] In *Am. Dredging Co.*, the federal Eastern District Court of Pennsylvania approved a stipulated settlement awarded as part of a wrongful death claim in 1989. The settlement included, *inter alia*, a $37,500.00 payment to be issued on July 1, 2014. In 2011, the payee entered into a purchase agreement wherein she consented to the transfer of $22,500.00 of the lump sum she was to realize on July 1, 2014, in exchange for $13,100.00. The payee filed a petition for a partial transfer of settlement in Monroe County as required by the SSPA. After a hearing, the county court requested that the petitioners obtain approval from the District Court, where the agreement was originally approved. The District Court observed that this "proposed transfer would contravene the terms of that structured settlement agreement. Thus, pursuant to the language of the statute, this court must expressly approve[] in writing the transfer of structured settlement rights before the state court may grant its approval." *Am. Dredging Co.*, *supra* at *2. Similarly, here, the transfers contravened the terms of the Settlement Approval Order where they all provided for the sale of annuities to third parties for significantly less than they were worth, prior to the time at which they were to be paid to Zachary.

approval is especially important here because Allegheny County Orphans' Court approved the settlement when Zachery was a minor and he was still a minor when the Butler County Petition was filed. This advances the SSPA's purpose to protect beneficiaries of structured settlements, especially minors, from being taken advantage of by others.

For all these reasons, Sempra's argument does not merit relief.[15]

**3.**

Next, Sempra argues that because Pinnacle is a party in the Allegheny County Orphans' Court but is not involved in the Butler County action, the Allegheny County Orphans' Court erred in coordinating the case. While Pinnacle is not a party to the Butler County action, it is involved in the bigger, common question of whether Zachary's interests are being protected as required by the SSPA or whether he has been taken advantage of. Consideration of all matters related to the structured settlement in one location, rather than doing it piecemeal in separate jurisdictions, will result in "the efficient utilization of judicial facilities and personnel and the just and

---

[15] Sempra maintains that the Allegheny County Orphans' Court misread the July 6, 2005 order by interpreting it as requiring its approval before any assignment or transfer of settlement funds. Sempra argues that this limiting language applied only to the $896.00 balance of the settlement. While we agree with Sempra that the Allegheny County Orphans' Court misread the July 6, 2005 Settlement Approval Order's limiting language that it had to approve changes only to the $896.00 settlement balance, that argument is irrelevant, given that the SSPA requires the court that previously approved settlement to approve the settlement agreement, *i.e.,* the Allegheny County Orphans' Court.

efficient conduct of the actions" and will avoid "inconsistent rulings, orders or judgments[.]" Pa.R.C.P. 213.1(c)(4), (5). For all these reasons, the Allegheny County Orphans' Court did not abuse its discretion in balancing the factors of Rule 213.1.

**B.**

Next, Sempra contends that the Allegheny County Orphans' Court abused its discretion in granting the Motion to Coordinate because the Butler County case is not pending. (**See** Sempra's Brief, at 24-25).

Pursuant to Rule 213.1, a party may seek to coordinate actions pending in different counties to avoid "multiple trials and proceedings" and inconsistent rulings and orders. Pa.R.C.P. 213.1, *explanatory comment*. A court may coordinate actions only for pretrial proceedings for a determination of specified issues of law or fact or for trial. **See id.**, *official comment*. Motions to coordinate must be filed before a court renders a decision on the alleged common question of law or fact. **See Geiger v. Rouse**, 715 A.2d 454, 456-57 (Pa. Super. 1998).

In this case, Sempra's Motion to Enforce remains pending in Butler County and it goes to the common question underlying this case: are Zachary's rights in the 2005 Settlement Approval Order being protected or has he been taken advantage of by the various defendants. Judge Yeager agreed that Sempra's Motion to Enforce and all other issues arising out of the

29

2005 Settlement Approval Order should be heard in Allegheny County Orphans' Court. This issue lacks merit.

## C.

In its third issue, Sempra argues that the Allegheny County Orphans' Court abused its discretion in granting the Motion to Coordinate where it lacks subject matter jurisdiction on the bases of the coordinate jurisdiction doctrine, and that more than 30 days has passed since the April 18, 2018 Butler County order approving the sale of Zachary's annuities by his Father without his knowledge.

## 1.

In making that argument, Sempra first maintains that pursuant to the coordinate jurisdiction doctrine, the Allegheny Count Orphans' Court lacks subject matter jurisdiction to modify or rescind the Butler County April 18, 2018 order. "Pursuant to the coordinate jurisdiction doctrine, judges of equal jurisdiction sitting in the same case should not overrule each other's decisions." **Ario v. Reliance Ins. Co.**, 980 A.2d 588, 597 (Pa. 2009) (citation omitted).

We disagree for several reasons. First, as previously explained, Allegheny County Orphans' Court under 40 Pa.C.S. § 4003 must approve any changes in the structured settlement before the Butler County court gives approval. In such a situation, the coordinate jurisdiction rule does not apply because the court that is hearing the SSPA petition must have obtained

approval by the court that approved the structured settlement. In other words, each must exercise its independent judgment of the advisability of the change in the 2005 Settlement Approval Order.

Second, and ignoring all that, the Allegheny County Orphans' Court did not overrule any decision of the Butler County court. Although the Allegheny County Orphans' Court granted the Motion to Coordinate, it did not make any ruling on the motion's allegation that the Butler County order should be voided as improvidently entered. The Butler County case was transferred to the Allegheny County Orphans' Court so that any open matters that related to the 2005 Settlement Approval Order, *i.e.,* Sempra's Petition to Enforce, and Zachary's claim that the approval of the structured settlement sales were improperly obtained, could be heard together. The coordinate jurisdiction rule has no application here because the underlying impropriety of the sale was not at issue in Butler County, only the fairness of the sale.

**2.**

Finally, Sempra argues that the passage of time deprives the Allegheny County Orphans' Court of jurisdiction to change the April 18, 2018 Butler County order approving the sale of Zachary's annuities pursuant to the language of 42 Pa.C.S. § 5505 ("Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.").

31

Again, ignoring whether the April 18, 2018 order was procured by internal or extrinsic fraud, whether the order should be voided because there was fraud on the court that prevented it from carrying out its independent authority to approve the sale, or that the failure to follow the statutory mandates vitiated any approvals given, the Allegheny County Orphans' Court's June 5, 2020 order neither overruled nor vacated the Butler County order. It coordinated Sempra's Butler County case that has a pending Motion to Enforce in the Allegheny County Orphans' Court so that any motions arising as a result of the structured settlement can be decided in Allegheny County, "the situs of the original Order dated July 6, 2005." (Orphans' Ct. Op., at 4). Judge Yeager also entered his own order in Butler County transferring any litigation that arose out of the 2005 Settlement Approval Order to Allegheny County Orphans' Court.

Accordingly, for all the foregoing reasons, we affirm the Allegheny County Orphans' Court's order granting Zachary Barber's Motion to Coordinate where coordination is "a fair and efficient method of adjudicating the controversy." **Pennsylvania Manufacturers' Ass'n Ins. Co**, **supra** at 794.

Order affirmed.

32

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  05/14/2021